UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04-CV-223-H

GAIL JEWELL                                                                                                      PLAINTIFF

V.

HOUSEHOLD LIFE INSURANCE CO.                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Gail Jewell ("Jewell"), brings claims against Defendant Household Life Insurance Co. ("Household") for breach of contract, violation of the Kentucky Unfair Claims Settlement Practices Act, and bad faith based on Household's failure to pay under a credit life insurance policy. The various motions for summary judgment require the Court to interpret the language contained in the insurance documents and also require the Court to decide whether the insurance policy language itself or the language of the insurance certificate actually provided to Jewell governs Household's obligations. The Court has had the benefit of excellent memoranda and argument of counsel at a conference.

I.

On October 26, 2001, Jewell and her husband applied for credit life insurance in connection with the refinancing of their home. The life insurance coverage Jewell obtained was governed by the terms of Group Policy Number AKY017 (the "Group Policy"). Jewell did not receive a copy of the Group Policy. Under such life insurance, upon Jewell's death or

dismemberment, Household would pay Jewell's lender the amount remaining on her mortgage. Following her application, Jewell received a Certificate of Credit Life and/or Disability Insurance with Dismemberment Schedule (the "Certificate of Insurance") stating an effective date of October 31, 2001. She also received copies of the Optional Credit Insurance Disclosure (the "Disclosure") and the Notice of Proposed Credit Insurance (the "Notice").[1]

The Disclosure contains the following provision:

DISMEMBERMENT. If you sustain bodily injuries while insured under this certificate and if such injuries do not result in death within ninety (90) days but result in dismemberment as described in the Definition s [sic] Section of this certificate, the Company will pay the amount of life insurance as described in the Decreasing Life Insurance Benefit provision of this certificate on the date of such loss.

The Notice also contains a provision regarding dismemberment, which reads as follows:

Dismemberment. If you sustain bodily injuries which result in dismemberment while this insurance is in force and if such injuries do not result in death within ninety (90) days, the Company will pay the amount of life insurance as described in the LIFE INSURANCE provision.

No dismemberment benefit will be paid for dismemberment caused wholly or partly, directly or indirectly by self-inflicted injury.

In addition, the Notice contains the following:

READ YOUR CERTIFICATE CAREFULLY. It is evidence that we insure you. This Certificate is subject to the provisions of the Group Policy under which it is issued and contains all details about the insurance as it applies to you.

In November 2002, Jewell became seriously ill and on November 17, 2002 underwent surgery as a result of her illness.[2] During the surgery, Jewell developed a blood clot that

---

[1] The parties have stipulated that the Certificate of Insurance, the Disclosure, and the Notice collectively constitute the Certificate, and the Court will refer to the three as such.

[2] Plaintiff does not specify the illness that led to the surgery other than to say she "became seriously ill . . . and required surgery."

necessitated an above-the-knee amputation of her right leg.  Jewell submitted a claim for dismemberment benefits to Household on or about December 1, 2002.  Household denied coverage in a letter dated February 26, 2003 that reads in relevant part as follows:

> As stated in the [Certificate], "this Certificate is subject to the provisions of the Group Policy under which it is issued and contains all details about the insurance as it applies to you."
>
> Enclosed is a copy of the Group Policy for your review.  Please refer to the Dismemberment Rider of the Policy.  The Dismemberment Rider contains an exclusion which specifically states that "injury means accidental bodily injury . . . resulting in loss of sight, a hand or a foot, independently of sickness or other causes."  Therefore, under this exclusion, surgical amputations are clearly excluded from coverage.

The Dismemberment Rider of the Group Policy reads in relevant part as follows:

> A benefit will be payable if an Insured Debtor or Joint Insured Debtor sustains bodily injury while covered for dismemberment under the group policy and if such injury does not result in death but does result in total and permanent loss of any of the following within ninety (90) days after the date such injury is sustained:
>
> 1.   Sight of an eye; or
> 2.   Loss of hand by severance at or above the wrist; or
> 3.   Loss of a foot by severance at or above the ankle. [ ]
>
> Exclusions – No dismemberment benefits are payable for such loss caused wholly or partly, directly or indirectly by intentionally self-inflicted injury.  *Injury means accidental bodily injury . . . resulting in loss of sight, a hand or a foot, independently of sickness or other causes.* (emphasis added).

Jewell subsequently filed this action seeking insurance benefits and damages for breach of the Kentucky Unfair Claims Settlement Practices Act and bad faith.  Presently, the Court is considering Household's motion for summary judgment on Jewell's contract and bad faith claims and Jewell's motion for partial summary judgment on her contract claim.  The parties have conceded there are no material factual disputes on the breach of contract claim.  Summary

3

judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The only disputed issues are the construction and interpretation of the insurance policy, which are matters of law for the Court to determine.

## II.

Kentucky law has a number of requirements for policies issued to a creditor to insure its debtors. Section 16 of Chapter 304 of the Kentucky Revised Statutes applies generally to creditor group life insurance policies.[3] *Morton v. Bank of the Bluegrass and Trust Co.*, 18 S.W.2d 353, 356-57 (Ky. Ct. App. 1999). Its provisions require that an insurer who issues a credit life insurance policy deliver to the policyholder (the creditor) for delivery to each debtor a form "which will contain a statement that the life of the debtor is insured under the policy and that any death benefit paid thereunder . . . shall be applied to reduce or extinguish the indebtedness." KRS § 304.16-220. Ky. Rev. Stat. Ann. § 304.18-080 requires that each insured under an accidental life insurance policy be issued a certificate "advising the insured of his coverage and exclusions from coverage incorporated in his policy of insurance."[4] *Breeding v. Massachusetts Indemnity and Life Ins. Co.*, 633 S.W.2d 717, 718 (Ky. 1982). Therefore, the threshold question is whether the Group Policy contains exclusions from dismemberment

---

[3] Jewell makes arguments under Ky. Rev. Stat. Ann. § 304.16-180; however, § 304.16-110 expressly makes section 180 inapplicable to policies issued to a creditor to insure its debtors.

[4] Household argues that the requirements of § 304.16-220 are all that Household was required to satisfy under the Kentucky Insurance Code. As noted above, the Court disagrees and finds *Breeding* controlling in this situation – as in *Breeding*, the policy at issue is an accidental life insurance policy, albeit one issued to a creditor to insure the lives of its debtors – and additional requirements are applicable under relevant case law.

coverage that are not disclosed in the Certificate.[5]

The Group Policy defines "injury" as "accidental bodily injury . . . resulting in loss of sight, a hand or a foot, *independently of sickness or other causes*." (emphasis added). The Certificate does not define the term "injury." Consequently, the Group Policy contains two limitations on coverage that are absent from the Certificate: (1) the requirement that the injury be "accidental," and (2) the requirement that the injury result "independently of sickness or other causes." Under the terms of the Group Policy alone, Jewell's surgical amputation would not qualify as an "accidental bodily injury" that resulted in dismemberment "independently of sickness or other causes." Household argues that the Group Policy terms control because the Certificate states that it is subject to the terms and conditions of the Group Policy. For a number of reasons, the Court respectfully disagrees in these circumstances.

The Kentucky legislature has required insurers to issue certificates disclosing coverage and exclusions. The Sixth Circuit has interpreted this to mean that a defendant "was under an absolute duty to provide the [insured] with a certificate of insurance outlining his coverage and exclusions from coverage under the policy," and that making the master policy available to the insured upon request did not satisfy the statutory requirement of delivery contained in Ky. Rev. Stat. Ann. § 304.18-080(2). *Hale v. Life Ins. Co. of North America*, 750 F.2d 547, 550 (6th Cir. 1985). In that case, the court held that policy limitations on disability insurance that were contained in a master group policy but absent from the certificate provided to the insured were inapplicable to the insured. As here, the insurance company denied coverage based on a rider

---

[5] Both the Group Policy and the Certificate contain the exclusion for dismemberment that results from self-inflicted injuries, although this exclusion is not relevant to our case.

5

contained in the master policy but not stated anywhere in the certificate. The court held that the insurance company was estopped from asserting the exclusion in the master policy, because "[n]otice of limitations to the insurance coverage provided an insured is a fundamental policy of this commonwealth." *Id.* at 550, citing *Twin City Fire Ins. Co. v. Terry*, 472 S.W.2d 248 (Ky. 1971). This Court agrees with the analysis in *Hale* and finds it controlling law in these circumstances.

The next question presented is whether the relevant exclusion contained in the Group Policy is absent from the Certificate.[6] The Group Policy contains exclusions for injuries that are not "accidental" and do not result "independently of sickness or other causes." Household could easily have included these exclusions in the Certificate and did not. Although the Certificate does contain a section of definitions for various terms, the two exclusions are not included. In essence, the Certificate implies broader coverage than the Group Policy because the Certificate does not contain the definition of "injury" that is present in the Group Policy. Though the Certificate states that it is subject to the Group Policy terms, the same sentence also states that the Certificate contains all details about the insurance as it applied to Jewell. Jewell cannot fairly be expected to surmise that the Group Policy might contain additional material limitations on coverage based on the information provided to her in the Certificate. An insurance policy issued for delivery to any person in this state, even though in violation of the Kentucky Insurance Code, but otherwise binding on the insurer, shall be held valid. Ky. Rev. Stat. Ann. § 304.14-210(1). Therefore, the Court concludes that the contract of insurance, without the

---

[6] Although it is unclear from current Kentucky cases whether a credit life insurance policy is a "group health policy" within the terms of Ky. Rev. Stat. Ann. § 304.18-080(2), the Court agrees with the *Hale* court's conclusion that the Kentucky Supreme Court "would apply to this case the same principles . . . made applicable to Group Health policies as a matter of Kentucky law." *Hale*, 750 F.2d at 550.

"accidental" and "independently of sickness or other causes" exclusions contained in the Dismemberment Rider to the Group Policy, is binding upon Household and Household is liable thereunder.

III.

Household argues that, even in the absence of the stricken exclusions, the Certificate should be construed to deny dismemberment coverage because Jewell's surgical amputation resulted from something other than a "bodily injury." Household argues that the requirement that Jewell "sustain bodily injuries which result in dismemberment" within ninety days of an injury cannot fairly be read to encompass a surgical amputation as a result of a blood clot, and that the only significance of the word "accidental" in the Policy would be to exclude intentional bodily injury by the insured. This point is debatable. *Compare Kolb v. The Paul Revere Life Ins. Co.*, 355 F.3d 1132 (8th Cir. 2004) (surgical complication during elective surgery that resulted in disability was "accidental bodily injury" and not sickness under policy); *with Senkier v. Hartford Life & Acc. Ins. Co.*, 948 F.2d 1050, 1053 (7th Cir. 1991) (stating "[m]edical treatment is often risky and when the risk materializes and the patient dies we do not call it dying in or because of an accident; it is death from sickness"). In addition, the Court notes that the intentional injury exclusion was contained in both the Group Policy and the Certificate, which casts doubt on Household's assertion that "accidental" is essentially a substitute for the intentional injury exclusion. The Group Policy definition of "injury" clearly narrows the scope of that term in the Certificate.

The Court need not decide whether an "accident" actually caused Plaintiff's amputation. Jewell has admitted that a sickness necessitated the surgery that lead to the blood clot that then

required the amputation. The "sickness" exclusion was not contained in the Certificate and is therefore inapplicable to Jewell. Other courts have reached similar conclusions regarding injuries caused in part by sickness. *See, e.g., Miller v. The Hartford Life Ins. Co.*, 348 F. Supp. 2d 815 (E.D. Mich. 2004) (insured's injury as a result of physicians' negligence during surgery for gallstones was either result of "sickness or disease" or "medical or surgical treatment" under policy); *Biondo v. Life Ins. Co. of North America*, 116 F. Supp. 2d 872 (E.D. Mich. 2000) (detached retina that resulted in "loss of sight" under dismemberment policy was bodily injury caused in part by pre-existing eye disease).

Defendant argues that the necessary implication of the phrase "sustain bodily injuries" is that some event occur other than sickness or a surgical complication – in essence, that a blood clot that necessitates an amputation is not a "bodily injury" that results in dismemberment. The Court can find no authority to support the proposition that a separate and distinct "bodily injury" or event other than a sickness, disease, or surgical complication must cause the injury that qualifies as dismemberment in the absence of a specific exclusion so stating. In fact, the cases cited above seem to assume the contrary – that "dismemberment" is a defined term that means certain things and can result in a number of ways, some of which qualify for coverage under a given policy's terms and some which do not. Here, "dismemberment" is defined as the loss of sight of an eye, loss of a hand by severance at or above the wrist, or loss of a foot by severance at or above the ankle. Jewell's injury was the loss of a portion of her leg as a result of a surgical complication – a blood clot – that developed during surgery she required as a result of sickness. This injury falls under Household's definition of "dismemberment." Under the Group Policy, the "sickness" exclusion would act to bar coverage. However, the Certificate does not contain

the "sickness" exclusion. Therefore, the "sickness" exclusion is not binding on Jewell. The Court holds that Household is liable for dismemberment coverage under the Group Policy and that none of the Group Policy exclusions bar coverage.

IV.

Plaintiff has not yet had an opportunity for discovery on its bad faith claim. Therefore, the Court cannot say as a matter of law that Defendant is entitled to summary judgment on that claim. While the Court has ruled in favor of Plaintiff on the policy interpretation questions, the Court has found reasonable arguments on both sides of several issues. Consequently, to make a case of bad faith would seem to be an uphill struggle. At this time, the Court must deny Defendant's motion on the bad faith claim, although Defendant may refile for summary judgment on this claim at any time.

The Court will issue an order consistent with this Memorandum Opinion.

cc:   Counsel of Record